IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, | ) ) ) | Civil Action No. 3:07-cv-01693-CMC |
| Plaintiff, | ) ) | OPINION AND ORDER |
| v. | ) ) | |
| GRACE M. HOH, | ) ) | |
| Defendant. _____ | ) ) | |

Through this action, Plaintiff, North American Company for Life and Health Insurance ("North American"), seeks a declaration that the life insurance policy which it issued to Defendant's husband, William Hoh ("Hoh"), is void or otherwise unenforceable. The matter is presently before the court on North American's motion for summary judgment. For the reasons set forth below, this motion is granted.

**STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**FACTS**

Taken in the light most favorable to Defendant, the nonmoving party, the facts are as set forth below.

**Application for Insurance.** In late January or early February 2006, Hoh (or someone acting on his behalf) began the process of applying for a $250,000 life insurance policy on Hoh's life to be issued by North American. *See* Dkt. No. 49-3 at 12-17. The application was initially taken over the phone by an independent insurance broker who worked for Insurance Central Services ("ICS"). The ICS agent filled in answers to application questions on a computer module. The computer then generated a completed application which could only be modified by pen and ink changes. *See* Dkt. No. 49-4 at 5 (Depos. of Matthew Gerety at 21).

Hoh corrected one of the responses when he reviewed and signed the form on February 3, 2006. This resulted in a response which was marked "no" by the computer and "yes" in pen and ink. This inquiry related to alcohol consumption. The limited degree of alcohol consumption revealed was not, itself, significant to North American's decision to insure Hoh. The dual answers did, however, cause North American to require further clarification (discussed below).

As part of the application process, Hoh also underwent a paramedical exam. This examination was also completed on February 3, 2006, and included a medical history taken from Hoh. *See* Dkt. No. 49-3 at 18-19. Both the examination and Hoh's answers to the medical history questions indicated that he was in good health with no significant medical conditions. There is no evidence that Hoh believed otherwise at the time of the initial application.

The Life Insurance Application-Part A included the following agreement:

The Owner Understands And Agrees As Follows:
Statements in the Application - All statements in this application are true and

> complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. Statements in this application, including statements by the Proposed Insured in any medical questionnaire that become a part of this application, will be the basis of any insurance issued. *False statements or misrepresentation in this application may result in loss of coverage under the contract.*
>
> Effective Date - *Any insurance issued as a result of this application will either: (1) not take effect until the full first premium is paid and the contract is delivered to and accepted by the Owner during the lifetime of any person proposed for insurance and while such person is in the state of health as described in all parts of the application*; or (2) take effect only as specified in the Temporary Insurance Agreement, if issued.

*See* Dkt. No. 49-3 at 16 (emphasis added).

Based on Hoh's February 3, 2006 application and related paramedical examination, North American's underwriters decided to issue the requested policy. This decision was made on or before April 9, 2006. The issuance of the policy was, however, subject to the additional requirement that Hoh sign an Amendment of Application form ("Amendment") re-answering the question regarding alcohol use which had been marked both yes and no. Dkt. No. 49-6 at 3-4 (Depos. of Keith Bush). The Amendment also included a reaffirmation of the truthfulness of all other answers as originally provided. Dkt. No. 49-3 at 21.

On April 10, 2006, ICS mailed the policy to Hoh with a cover letter instructing him to complete and sign the enclosed Amendment as well as a Statement of Health form ("Health Statement"). ICS's cover letter advised Hoh that his coverage would not be in effect until he completed and returned the Amendment and Health Statement (collectively "Supplemental Forms"). The letter also advised that effectiveness of coverage was based on the requirements of North American and applicable law. Dkt. No. 49-5 at 5-7.[1]  ICS's instructions were incorrect in one

---

[1] These pages include deposition pages and a recent printout of the letter sent to Hoh. As explained in the deposition, the computer automatically redates the letter when it is printed out. The date on the letter in the record is not, therefore, the actual date on which the letter was sent.

3

respect: the Health Statement was not, in fact, required by North American for issuance of Hoh's policy. *See* Dkt. No. 57 (Plaintiff's Reply acknowledging Health Statement was not required but arguing that it was "relied on" once it was received).

Hoh completed, signed, and mailed the Amendment and Health Statement back to ICS on or about April 15, 2006. The Amendment included the following statement and affirmation by Hoh: "[w]ith the exception of the modification to the application listed below, the representations, agreements and statements contained in the original application are to remain in force and apply to this addenda." The only modification listed related to the alcohol question. *See* Dkt. No. 49-3 at 22.

The Statement of Health consisted of a series of questions followed by blocks which could be checked "yes" or "no." Any yes answer required an explanation. The following two responses are relevant to the present litigation:

> This statement is true to the best of my knowledge, that since the date of the original application(s) I, (the Insured):
>
> 1. have consulted or been treated by any physician or practitioner or had any physical disability or impairment, sickness, injury, surgery or mental disorder;
>
> [answered "no"]
>
> 2. have had a physician examination, lab tests, EKG or X-ray procedures[.]
>
> [answered "no"]

Dkt. No. 49-3 at 21. Immediately above his signature on the Statement of Health, Hoh agreed that:

> I acknowledge that I have read the above completed health statement or that it has been read to me. I understand that any false statement or representation in the application and/or health statement may result in loss of coverage subject to the incontestability provision and legal proceedings under the policy. I agree that the answers given above will become a part of the original application, including any supplement to the application. So far as I know and believe, the original application, as changed above, is true, complete and up-to-date.

4

*Id.*

**Changes in Health Predating Return of Supplemental Forms.** Shortly before he completed and returned the Amendment and Health Statement, Hoh began to experience symptoms suggestive of a serious medical condition. He sought and received medical evaluations and treatment as a result of these symptoms beginning on April 7, 2006.

The evidence of these problems, evaluations and treatments is as follows. On April 7, 2006, Hoh consulted Dr. Gerald A. Fishman at Lexington Medical Center, for shortness of breath, chest pain, dizziness, and fatigue. Dkt. No. 49-8. During this consultation, Hoh underwent a physical examination, EKG, urinalysis and bloodwork which revealed "very, very low hemoglogin." Dkt. No. 49-8 at 4-5. Dr. Fishman recommended hospitalization for further evaluation but Hoh declined. *Id.* On April 8, 2006, Hoh returned to Lexington Medical Center for severe anemia and consulted Dr. March Seabrook. Dkt. No. 49-9. Hoh remained in the hospital overnight, underwent an esophago-gastroduodenoscopy and a colonoscopy, and received a blood transfusion during this hospitalization. Dkt. No. 49-9 at 3-4 (Depos. Dr. March Seabrook indicating his suspicion of bone marrow problems). Given conditions ruled out by these tests, Hoh was referred to a hemotologist who first examined Hoh on April 11, 2006, then performed tests including a bone marrow aspirate on April 13, 2006. Dkt. No. 49-3 at 8-9 (Depos. Of Grace Hoh); Dkt. No. 49-10 at 3 (Depos. of Dr. Asheesh Lal). Each of these events predated completion of the Supplemental Forms.

On April 20, 2006, several days after the Supplemental Forms were returned to ICS, Hoh received the results of the bone marrow aspirate. These results reflected that Hoh had a subcategory of myelodysplastic syndrome ("MDS"), a bone marrow disorder, called refractory anemia with ringed sideroblasts. Dkt. No. 49-10 at 10-11 (Depos. of Lal). While these results were not provided

5

until after Hoh returned the Supplemental Forms, they reflect his health prior to the date the forms were completed and returned.[2]

**Denial of Claim.**  Hoh died on December 5, 2006.  His wife, Defendant in this action, filed a claim for benefits under the policy.  Upon receipt of the claim, North American conducted a routine contestable claim investigation.  This investigation revealed that Hoh had experienced significant changes in his health between the time he signed the initial Application on February 3, 2006, and his completion and return of the Amendment and Health Statement (on or about April 15, 2006) as described above.  These changes were not disclosed to North American in the Amendment, Health Statement, or in any other manner.  *See* Dkt. No. 49-6 at 5 & 49-7 at 3-5 (Depos. of Anthony Mayers at 17-19).

In light of information obtained during its investigation, North American informed Defendant on or about May 20, 2007, that it was rescinding the policy.  North American tendered a refund of all premiums paid on the policy with its notice of recision.

**Materiality.**  North American has presented uncontradicted evidence that it would have postponed issuance of the policy had it been aware, prior to the date of issuance, that Hoh was suffering from a severely low hemoglobin level or had undergone a bone marrow aspirate for the purpose of diagnosing a possible bone marrow disorder.  *See* Dkt. No. 49-6 at 4-5.  North American has, likewise, presented evidence that it would have rescinded the policy for failure of a condition precedent had it learned after issuance but within the contestability period, that Hoh was suffering

---

[2] During Hoh's April 11 visit, Dr. Lal noted that Hoh had a hemoglobin level of 6.1 on April 8, 2006.  Dkt. No. 49-10 at 4 (Dr. Lal's office notes).  Hoh's 6.1 hemoglobin level on April 8, as well as his dizziness and shortness of breath noted on April 7, were symptoms of MDS.  *Id.* at 11-12.  In Dr. Lal's opinion, Hoh had MDS at least as early as April 9 and quite possibly had it prior to March 30, 2006.  *Id.* at 13-14.  In any event the lab results reflected Hoh's bone marrow condition as of April 13, 2006, when the sample was taken.  *Id.* at 11.

from low hemoglobin or MDS prior to the date the policy was delivered and accepted.

This evidence includes North American's underwriting guidelines which require that issuance of a policy be postponed if the applicant's hemoglobin level is below a certain percentage. For a male in Hoh's age bracket, this level is 10%. Hoh's 6.1% level on April 8, 2006, would, therefore, have resulted in postponement of issuance of the policy if North American had been made aware of Hoh's April 8th hemoglogin level prior to issuance of the policy (which occurred on or before April 9, 2006), or recision of the policy if it had been informed of Hoh's low hemoglobin level at the time he returned the Supplemental Forms (on or after April 15, 2006). Dkt. No. 49-11 (Affid. of Keith Bush, ¶3). North American's underwriting guidelines also reflect that it would not have issued the policy (or would have immediately rescinded it) if it had been aware that Hoh was suffering from MDS at or prior to the date of issuance *or* the delivery and acceptance of the policy. *See id.,* ¶4 & Dkt. No. 49-11 at 5 (indicating this diagnosis would have led to an underwriting action of "RNA," meaning "Risk Not Acceptable").

Testimony elicited from Defendant's experts during discovery supports North American's position. For example, Blake Amick testified at his deposition that a diagnosis is not required for a health problem to be apparent. Amick agreed that a health problem may be "apparent" if a person is hospitalized and undergoing tests, even if the source of the problem is unknown. Dkt. No. 49-12 at 3 (Depos. of Blake Amick). More specifically, Amick agreed that a hospitalization for a very low blood count and scheduling of an individual for a bone marrow aspirate test would put the individual on notice of an apparent health problem. *Id.* at 3-4. Similarly, Defendant's other expert, Doug Mackey, agreed that a bone marrow condition would constitute a significant change in health from the state indicated in Hoh's initial Application and related paramedical examination. *See* Dkt. No.

49-13 at 3 (Depos. of Doug Mackey).

## DISCUSSION

North American asserts that it is entitled to summary judgment on two grounds. First, it argues that Hoh's failure to disclose his recent health history and changes in the state of his health in his Health Statement and Amendment resulted in a material misrepresentation on the policy application which entitled North American to rescind the policy. Second, North American argues that the significant change in the state of Hoh's health between the date of the original application and the delivery and acceptance of the policy constitutes failure of a condition precedent. These grounds are addressed, in turn, below.

**I.     Rescission for Misrepresentation.**

To declare a life insurance policy void based on misrepresentations, an insurer must establish all of the following elements: (1) the application contains false statements; (2) the falsity was known to the applicant; (3) the false statements were material to the risk; (4) the insurer relied on the statements; and (5) the false statements were made with the intent to deceive and defraud the insurer. The fifth element, intent to deceive, can be inferred under certain circumstances. *Reese v. Woodmen of World Life Ins. Soc*., 69 S.E.2d 919 (S.C. 1952).

Whether Hoh's policy should be declared void as a matter of law under this standard presents a close question. Given the very significant health issues which Hoh had experienced immediately prior to signing the Supplemental Forms, it is indisputable that his answers to the first two inquiries on the Health Statement were not only false but were known by Hoh to be false. It can also reasonably be inferred that he made these false statements with an intent to deceive. In light of the obvious purpose of the inquiries, such an inference may be the only reasonable one. *See Reese*, 69 S.E.2d at 922-24.

8

North American's reliance on the false answers in the Health Statement is, however, less clear. This is because North American's rules did not require that these forms be returned. Hoh's application would not, therefore, have been rejected had he failed to return this form. Thus, although North American would almost assuredly have either postponed issuance or declined to allow the policy to go into effect had Hoh returned a form which revealed his recent difficulties (and would ultimately have declined or revoked the policy once it learned of the MDS diagnosis), it is not clear that this is enough to establish reliance as a matter of law given that the form was not required to be returned.[3]

The Amendment which was completed and returned on the same date is also false if read to affirm the *continued* validity *as of the date the Amendment was signed* of information provided on the original application. This seems the most likely intent of the form. It is, however, possible that Hoh understood the form to seek reaffirmation of the accuracy of the original application *as of the date the original application was completed*. This possibility makes it difficult to establish intent to deceive as a matter of law. Reliance, on the other hand, is fairly easy to establish as to this form because North American required return of the Amendment as part of the acceptance of the policy (which was, in turn, necessary to place the policy into effect).

There is, therefore, a potentially reasonable basis for challenging at least one element of the proof necessary to rescind or void the policy if the two Supplemental Forms are considered independently. Considered together, the forms present a closer question because their

---

[3] Hoh was presumably unaware that he was not required to return the Statement of Health. This fact reflects only on his intent, not on North American's reliance.

9

contemporaneous completion may allow for a common inference of intent and reliance. The court declines to resolve this close question because it concludes that North American is entitled to summary judgment on the alternate ground of failure of a condition precedent.

## II.     Failure of Condition Precedent

North American's second argument rests on language found in the original Application which was attached to the policy and became a part of the proposed insurance contract. This language provides that the policy would not become effective until: "the contract is delivered to and accepted by the Owner during the lifetime of any person proposed for insurance *and while such person is in the state of health as described in all parts of the application.*" Dkt. No. 49-3 at 16 (emphasis added).

The policy was mailed on April 10, 2006. It was, therefore, delivered to Hoh sometime between the mailing date, April 10, 2006, and the date Hoh signed and returned the Amendment and Health Statement on or about April 15, 2006. Given that return of at least the Amendment was required by North American, the policy could not have been accepted before Hoh's completion and mailing of the Amendment. Thus, the policy was "delivered" after April 10, 2006, and "accepted" no earlier than April 15, 2006.

Hoh began experiencing significant symptoms of a serious health condition no later than April 7, 2006, several days before the policy was mailed. He sought evaluation and treatment of those symptoms beginning on that same date, with significant related medical services being provided on April 7, 8, 9, 11 and 13, 2006. Although Hoh did not receive a diagnosis of MDS until April 20, 2006, that diagnosis was based on tests performed on April 13, 2006 and is consistent with the symptoms which caused Hoh to seek medical treatment beginning on April 7, 2006. Thus, it is

clear that Hoh was suffering from a serious health condition prior to North American's delivery and Hoh's acceptance of the policy. It is equally clear that this serious health condition was not disclosed in any part of the Application (including through the Amendment).

The court, therefore, concludes that Hoh did not satisfy a condition precedent for coverage because he was not, on the date of delivery and acceptance of the policy, "in the state of health as described in all parts of the application." Therefore, Hoh's policy failed as a matter of law to become effective due to failure of a condition precedent. The policy is, therefore, void.

## CONCLUSION

For the reasons set forth above, the court grants North American Company for Life and Health Insurance's motion for summary judgment and directs entry of a declaratory judgment that Defendant Grace Hoh is not entitled to payment of death benefits under the policy because of failure of a condition precedent to coverage. Plaintiff shall, however, tender return of any premiums paid under the policy within forty-five days from entry of this order. The requirement of tender shall be automatically stayed in the event of an appeal.

IT IS SO ORDERED.

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
July 21, 2008